IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
WILLIAM LOOP,                   :
                                :
     Plaintiff,                 :
                                :
v.                              :        CIVIL ACTION 09-0007-M
                                :
ALLIANZ LIFE INSURANCE COMPANY  :
OF NORTH AMERICA, et al.,       :
                                :
     Defendants.                :
```

MEMORANDUM OPINION AND ORDER

This action comes before the Court on Plaintiff's Motion to
Remand or, in the Alternative, to Conduct Discovery on the Issue
of Jurisdiction (Docs. 16-17).  Jurisdiction has been invoked in
this Court on the basis of diversity under 28 U.S.C. § 1332.  The
parties filed written consent and this action has been referred
to the undersigned Magistrate Judge to conduct all proceedings
and order the entry of judgment in accordance with 28 U.S.C. §
636(c) and Fed.R.Civ.P. 73 (see Doc. 14).  After consideration of
all relevant pleadings and evidence, Plaintiff's motion is
**GRANTED.**

The facts of this action, very briefly, are as follows.
Plaintiff William Loop is a resident of Baldwin County, Alabama
who attended a financial planning seminar at the Grand Hotel in
Point Clear, Alabama in September 2003 (Complaint p. 3, ¶ 1; p.

5, ¶ 1).[1]  Plaintiff talked with Defendant Dustin Mikkelsen, an
agent or employee of Defendant Linn & Associates, Inc. and
Defendant Allianz Life Insurance Company of North America, who
provided Loop with financial information on investments in
Allianz (Complaint, pp. 3-4, ¶¶ 2-4; p. 5, ¶¶ 2-3).  Mikkelson
told him that an "Allianz investment would provide him with an up
front 10% bonus" (Complaint, p. 5, ¶ 3).  On October 28, 2003,
Plaintiff took investments that he had and rolled them over to
purchase an Allianz BonusDex Elite Annuity; Loop paid $70,486.98
(Complaint, p. 5, ¶ 4).  In September 2008, Plaintiff learned
that he was unable to "withdraw all of his investment, along with
the bonus, without penalty" as he had come to believe he would be
able to do (Complaint, p. 6, ¶ 5).

On December 3, 2008, Loop brought this action in the Baldwin
County Circuit Court, raising three claims:  (1) fraud against
all Defendants; (2) suppression against all Defendants; and (3)
negligence/wantonness in the training, monitoring, and
supervising of its employees against Defendant Allianz
(Complaint).  The Defendants jointly removed this action on
January 7, 2009, asserting diversity jurisdiction as two of the
Defendants had been fraudulently joined (Docs. 1-2).  Loop
subsequently filed a Motion to Remand this action (Docs. 16-17).

---

[1]The Complaint appears as Exhibit A to the Notice of Removal,
filed by Allianz Life Insurance Company (Doc. 1).

2

Defendants have filed Responses to the Motion (Docs. 20-21).

In its removal petition, Defendant asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332 and that this action is removable pursuant to 28 U.S.C. § 1446(a) (Doc. 1). In a removal action, the party asserting jurisdiction has the burden of establishing proof of jurisdiction by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178 (1936); *see also Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1210 (11th Cir. 2007), *cert. denied sub nom Hanna Steel Corp. v. Lowery*, 128 S.Ct. 2877 (2008). In a removal action, that burden is upon the defendant. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921). Removal is a statutory remedy which must be narrowly construed so as to limit federal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *Robinson v. Quality Ins. Co.*, 633 F.Supp. 572 (S.D. Ala. 1986).

Defendant has a heavy burden in proving that this Court has subject matter jurisdiction over this action. *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). District courts have been instructed to consider the following principles in determining if the removal of an action from a state court was proper:

> Federal courts are courts of limited jurisdiction. While a defendant does have a right, given by statute, to remove in certain

3

> situations, plaintiff is still the master of
> his own claim.  Defendant's right to remove
> and plaintiff's right to choose his forum are
> not on equal footing; . . . removal statutes
> are construed narrowly; where plaintiff and
> defendant clash about jurisdiction,
> uncertainties are resolved in favor of
> remand.

*Burns*, 31 F.3d at 1095 (citations omitted).

The Court notes that any civil action over which the district court would have original jurisdiction may be removed by the defendant to the district court for the district in which the action is pending.  28 U.S.C. § 1441(a).  The district court has jurisdiction over actions between citizens of different states so long as all plaintiffs are diverse from all defendants, *Strawbridge v. Curtiss*, 7 U.S. 267 (1806), and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(b).

The first inquiry for this Court is to determine the diversity of the parties.  Plaintiff is domiciled in Alabama (Complaint, p. 3, ¶ 1).  Allianz is incorporated under the laws of Minnesota with its principal place of business also in that state (Doc. 1, p. 3, ¶ 3).  Though he initially claimed otherwise, Loop now admits that Defendant Lin is a Florida corporation (Doc. 16, ¶ 5).  The dispute is over the citizenship of Defendant Mikkelsen:  Mikkelsen, and the other Defendants, maintain that he is domiciled in Georgia while Loop asserts that he is an Alabama citizen.

Defendants have pointed to *Mas v. Perry*, 489 F.2d 1396 (5th Cir.), *cert. denied*, 419 U.S. 842 (1974), in making their argument, wherein the Fifth Circuit Court of Appeals[2] stated the following:

> A person's domicile is the place of "his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom. . . ." A change of domicile may be effected only by a combination of two elements: (a) taking up residence in a different domicile with (b) the intention to remain there.

*Mas*, 489 F.2d at 1399 (citations omitted). Defendants also reference a case coming out of this Court in which it was noted that "[d]etermination of a party's domicile requires a 'totality of the circumstances' approach weighing a constellation of objective facts, no single one of which is entitled to controlling weight." *Slate v. Shell Oil Co.*, 444 F.Supp.2d 1210, 1215 (S.D. Ala. 2006). In *Slate*, Judge Steele went on to note that

> [a]mong the numerous indicia considered are the state(s) where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, where bank

---

[2]In this action, Alabama law controls. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

> accounts are maintained, where places of
> business or employment are located, and where
> memberships in local professional, civil,
> religious or social organizations are
> established.

*Slate*, 444 F.Supp.2d at 1215.  The *Slate* Court further observed that "'[w]hen . . . a party contends that it has changed its domicile, and that contention has been challenged by the opposing party, there is a presumption of continuing domicile that must be overcome.'"  *Slate*, 444 F.Supp.l2d at 1216 (*quoting Reynolds v. Wohl*, 332 F.Supp.2d 653, 656 (S.D.N.Y.2004)).

In this action, there is no dispute that Mikkelsen was domiciled in Alabama as recently as October 16, 2008.  As support for their argument that Mikkelsen was domiciled in Georgia by December 3, 2008, the time this action was filed, Mikkelsen has asserted the following:

> 3.  On or around October 17, 2008, I moved
> from the State of Alabama to Georgia with the
> intent of making Georgia my residence.
>
> 4.  In order to establish residence in
> Georgia, I cancelled telephone service in
> Alabama and established telephone service in
> the State of Georgia.
>
> 5.  I updated my Wachovia Bank account to
> show my current address in Georgia.
>
> 6.  I have established my permanent residence
> in the State of Georgia and intend to remain
> a resident of the State of Georgia.

6

(Doc. 20, Exhibit K).[3]  In a second affidavit, Mikkelsen stated:

>    2.  I received a letter dated October 15,
> 2008 from the landlord for the 7071 Stone
> Drive, Daphne, AL 36526 property terminating
> Mikkelsen Wealth Management's lease
> agreement.
>
>    3.  I have requested the United States Post
> Office forward mail from the 7071 Stone
> Drive, Daphne, AL 36526 address to my
> residence in Georgia.
>
>    4.  Since moving to Georgia, I am active in a
> local church.
>
>    5.  I have updated my licensing information
> by notifying FINRA of my new residence in
> Georgia.

(Doc. 20, Exhibit I).[4]

The Court notes Mikkelsen's subjective statement of intent to establish residence in Georgia; such statements, however, are not dispositive.  *Slate*, 444 F.Supp.2d at 1215.  The Court further notes that the affidavits reveal very little real information.  Specifically, Mikkelsen has failed to provide any information regarding the address to which he moved and whether he moved into a house, an apartment, or a condominium.  Although Defendant cancelled phone service in Alabama and established it in Georgia, this could signify nothing more than a change in type

---

[3]This has been referred to by Defendants as Mikkelsen's First Affidavit (Doc. 20, p. 7).

[4]This has been referred to by Defendants as Mikkelsen's Second Affidavit (Doc. 20, p. 7).

of service, expansion of service, or a change in company;
Mikkelsen did not state when the change was made.  Mikkelsen also
failed to state when he requested Wachovia to change his address
and whether that was a residential or work address; likewise,
there are no dates associated with the forwarding of his mail,
his commencement of church attendance in Georgia, or his license
update.  The Court further notes that Defendant provided no
information regarding where he voted in the Presidential election
of 2008, where he expects to pay State taxes for 2008, and
whether or not he has acquired a Georgia driver's license.

Again, while no particular factor is given controlling
weight, there is much information that has not been provided.
What Mikkelsen has put forth has been incomplete.  The Court
recognizes that it is considering a short window of time (October
17 through December 3, 2008) for Mikkelsen to have gotten his
house in order, but notes that the burden is on Defendants to
prove that he has changed his domicile.  The Court finds that
Defendants have not satisfied that burden.  The Court finds that
Defendants have not proven that all Defendants are diverse from
the Plaintiff for purposes of removal.

Defendants have further argued, however, that Mikkelsen has
been fraudulently joined to defeat jurisdiction (Doc. 20, pp. 12-

17; Doc. 21, pp. 6-9).[5]  It is noted that "[a]n action may [] be removable if the joinder of non-diverse parties is fraudulent." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

The Eleventh Circuit Court of Appeals has stated that there are three situations in which joinder of a defendant may be considered fraudulent:

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.  The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.  [A third situation is] where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1288 (11th Cir. 1998).  In making this determination, this Court looks at "plaintiff's pleading at the time of the petition for removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939).  All questions of fact and law are resolved in favor of the Plaintiff. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.

---

[5]Because of the Court's determination in this matter, it will be unnecessary to take up the issue of whether or not Defendants have successfully demonstrated that the amount in controversy exceeds $75,000.

1989).  The Court may consider affidavits and deposition
transcripts in reaching its determination.  *Id.*

Defendants have more specifically argued that Mikkelsen has
been fraudulently joined in this action as the claims brought
against him are barred by the statute of limitations.  The
Alabama Supreme Court, in *Howard v. Mutual Savings Life Insurance
Co.*, 608 So.2d 379, 381 (Ala. 1992), held that "[a] fraud action
is subject to the two-year statute of limitations of Ala. Code
1975, § 6-2-38(l)[6], but the two-year period does not begin to run
until the plaintiff has discovered, or should have discovered the
fraud."  Suppression also carries a two-year statute of
limitations period.  *See Jones v. Kassouf & Co., P.C.*, 949 So.2d
136, 139 (Ala. 2006).

In the complaint, Plaintiff has asserted that Mikkelsen told
him that "he could withdraw all of his investment, including
[the] bonus, without penalty after 5 years" (Complaint, p. 5, ¶
3).  In September 2008, he learned that this was not the case
(Complaint, p. 6, ¶ 5).  In the first claim, Plaintiff asserts
that all of the Defendants engaged in fraud in providing
information to him that caused him to roll over his current
investments into the Allianz Annuity that he purchased; in the
second claim, Loop further asserts that all of the Defendants

---

[6]"All actions for any injury to the person or rights of another
not arising from contract and not specifically enumerated in this
section must be brought within two years."

10

suppressed information from him that he would not be able to withdraw all of the funds without penalty after five years (Complaint).

Defendants have tendered the Affidavit of Cynthia Rice, the General Operations Manager at Allianz, who regularly works with the business records compiled and stored by her employer (Doc. 1, Exhibit D, p. 2, ¶¶ 1-2).  Attached to that Affidavit is the policy issued to Plaintiff, executed on October 28, 2003 (Doc. 1, Exhibit D, p. 2, ¶ 3; pp. 5-33).  Also attached to Rice's Affidavit is a "Statement of Understanding," executed at the time of the Annuity Agreement, which states the following:

> 6.  To receive the full Annuitization Value, income payments may be taken any time after the fifth policy year.  These income payments must be made over a minimum of 10 years or over the annuitant's lifetime.  Various payment options are available.
>
> 7.  If annuity payments begin prior to the end of the fifth policy year, are made for less than 10 years, or are requested in one lump sum, payments will be based on the policy's Cash Value.

(Doc. 1, Exhibit D, p. 3, ¶ 5; pp. 37-40).  Another attachment to the Affidavit is a letter, dated October 11, 2004, sent from Allianz to Loop, which states, in part, as follows:

> Thank you for calling the Client Services Team at Allianz Life.  We appreciate the opportunity to be of service to you.  The current values for your policy are listed

11

below:

Current Annuitization Value: $78,149,92
Current Surrender Value: $64,300.61

Your annuitization value is the amount
you will receive as a stream of income.  The
surrender value you would receive in a lump
sum payment.

(Doc. 1, Exhibit D, p. 3, ¶ 6; p. 42).  Defendants have argued

that Plaintiff should have known by October 11, 2004, at the very

latest, that he was not going to withdraw all of his investment

after five years.  They further argue that the statute-of-

limitations-clock began to run by the date of this letter and

that the two-year limitations period would preclude the first two

claims in this action (Doc. 20, pp. 12-16; Doc. 21, pp. 6-8).

The conclusion to this argument is that Mikkelsen has been

fraudulently joined to defeat federal jurisdiction.

Plaintiff has responded to this argument, first presented in

the Notice of Removal, by pointing to a Fifth Circuit case,

*Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th

Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 992 (2005), in which

Judge Higginbotham discussed the "common defense rule."  As

stated by Judge Higginbotham,

when, on a motion to remand, a showing that
compels a holding that there is no reasonable
basis for predicting that state law would
allow the plaintiff to recover against the
in-state defendant necessarily compels the
same result for the nonresident defendant,

12

> there is no improper joinder;[7] there is only
> a lawsuit lacking in merit.  In such cases,
> it makes little sense to single out the
> in-state defendants as "sham" defendants and
> call their joinder improper.  In such
> circumstances, the allegation of improper
> joinder is actually an attack on the merits
> of plaintiff's case as such-an allegation
> that, as phrased by the Supreme Court in
> *Chesapeake & O.R. Co. v. Cockrell*, "the
> plaintiff's case [is] ill founded as to all
> the defendants."

*Smallwood*, 385 F.3d at 574 (quoting *Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146, 153 (1914)).  In other words, when a fraudulent joinder defense would eliminate not only the claims against a single defendant, but eliminates all claims against all defendants, then the common defense rule requires that the federal court reject the fraudulent joinder arguments and remand the removed action back to the State courts for appropriate action.[8]

Allianz has argued that *Smallwood* is "entirely

---

[7]In *Smallwood*, Judge Higginbotham adopted "the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past.  Although there is no substantive difference between the two terms, 'improper joinder' is preferred."  *Smallwood*, 385 F.3d at 571 n.1.

[8]"The Supreme Court thus made clear that the burden on the removing party is to prove that the joinder of the in-state parties was improper-that is, to show that sham defendants were added to defeat jurisdiction.  A showing that the plaintiff's case is barred as to all defendants is not sufficient.  When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made."  *Smallwood*, 385 F.3d at 575.

distinguishable, however, because Allianz's statute of limitation argument is not an "attack on the merits of the entire case, [] but rather an attack on two of the three counts in the Complaint" (Doc. 21, p. 9).  Defendant refers to Plaintiff's third claim, the claim for negligence/wantonness in the training, monitoring, and supervising of its employees against Defendant Allianz, as still being left (if the statute of limitations/fraudulent joinder argument eliminates the fraud and suppression claims).

However, Loop has directed the Court to another "common defense rule" case, this one from our sister court in the Middle District of Alabama, *Poole v. American International Group, Inc.*, 414 F.Supp.2d 1111 (M.D. Ala. 2006).  In *Poole*, Judge Thompson determined that if the "sham" individual defendants were barred by a statute of limitations defense, then the only claim remaining against the corporate defendants, a claim "for negligent and wanton hiring, training and supervision, which requires the finding of underlying tortious conduct by an employee before the employer can be held liable," would go away as well.  *Poole*, 414 F.Supp.2d at 1116 (citing *Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 824 (Ala. 1999)).  As summarized by Judge Thompson, "the arguments for barring state-tort liability against the non-diverse individual defendants appear to apply equally to preventing liability for the diverse corporate defendants." *Poole*, 414 F.Supp.2d at 1116.

14

The *Poole* action was referred back to the State courts.

The action here presents the same circumstance.  If the claims for fraud and suppression are barred because of the statute of limitations, the only claim left is the negligence/wantonness claim which would also disappear as one necessary element for proving it is the showing of underlying tortious conduct by an employee.  In other words, if the Court finds fraudulent joinder against Mikkelsen, this whole action collapses.  The "common defense rule" would have this Court remand the action back to the State.  This Court agrees with *Poole* and *Smallwood* in finding that this action should be remanded to the State Court for all further proceedings.

After consideration of all pleadings of record, the Court finds that this action was improvidently removed and that Plaintiff's Motion to Remand should be, and is, **GRANTED** (Docs. 16-17).  Therefore, the Court Clerk is **DIRECTED** to take necessary action to **REMAND** this action to the Baldwin County Circuit Court for all further proceedings.

DONE this 13th day of April, 2009.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE